GERTRUDE PARKER, APPELLANT, V. LANCASTER COUNTY SCHOOL DISTRICT NO. 001, ALSO KNOWN AS LINCOLN PUBLIC SCHOOLS, APPELLEE.
591 N.W.2d 532

Filed March 12, 1999.    No. S-97-1262.

William A. Wieland, of Healy & Wieland Law Firm, for appellant.

John M. Guthery and R.J. Shortridge, of Perry, Guthery, Haase & Gessford, P.C., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Gertrude Parker brought this action pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1994), against Lancaster County School District No. 001, also known as Lincoln Public Schools (LPS), to recover damages for injuries she sustained in a fall which occurred on school premises owned and operated by LPS. Parker also asserted a professional negligence claim against the architectural firm which designed the building. We affirmed the district court's dismissal of that claim in *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 579 N.W.2d 526 (1998). The case is now before us on Parker's appeal from an order of the district court for Lancaster County granting summary judgment in favor of LPS. We conclude that summary judgment should not have been entered and, therefore, reverse, and remand for further proceedings.

## BACKGROUND

Parker alleged that she was injured on October 1, 1995, when she fell in the multipurpose room of the Hulda Roper School in Lincoln, Nebraska. According to her petition, Parker "walked into an open entryway wherein an unmarked and unguarded

ramp or floor riser was present, causing her to fall into a wall and against the floor, proximately resulting in injuries and damages." Parker alleged that as the owner of the building, LPS should have been aware of the unguarded and unmarked floor riser and known that business visitors such as she would not discover the danger or would fail to protect themselves against it. Parker alleged that LPS was negligent in its "failure to provide a reasonably safe entryway . . . failure to use reasonable care to guard or barricade the floor riser . . . [and] failure to use reasonable care to mark or otherwise warn of the presence of the floor riser."

Viewed in a light most favorable to Parker, we note the record reflects the following uncontroverted facts: On October 1, 1995, Parker accompanied her daughter, Donna Ferguson, to the Hulda Roper School where Parker's great-grandson Tyler was a student. Their purpose was to attend an open house and dedication program for the recently opened school. After visiting Tyler's classroom, Parker and Ferguson proceeded to the multipurpose room, entering from a hallway through a set of double doors. They stopped briefly to determine where Tyler and his mother were sitting and then began to make their way in that direction.

Immediately to Parker's left as she entered the multipurpose room was a curved wall, adjacent to which were elevated portions of the floor which are referred to in the record as both "risers" and "steps." When viewed from the doorway through which Parker entered the room, these risers began as inclined ramps until reaching a certain elevation at which they became level. The ramp portion of the riser closest to the wall began a few feet inside the double doors, and the ramp portion of the second riser began a few feet beyond that. At its highest elevation, the riser immediately adjacent to the wall was higher than the one next to it so that when viewed from the center of the room, they appeared as two steps extending the length of the curved wall. The risers were not marked, and there were no warnings posted regarding their existence. The risers were covered by the same blue carpet as the adjacent floor area.

Parker and Ferguson had taken several steps into the room, with Parker walking slightly behind Ferguson and to her left, when Parker fell. Neither Ferguson nor anyone else actually

observed the fall. Parker, who was 82 years old at the time of the incident, sustained injuries to her left arm which required surgical treatment.

Judith Zabel, a school nurse, was called to the scene of the fall shortly after it occurred. In her deposition taken on September 17, 1997, Zabel stated that she did not specifically ask Parker what caused the fall, but that Parker stated several times while still lying on the floor, "I didn't see the step and I fell."

During Parker's deposition taken on December 19, 1996, she was unable to state the precise location where she fell or the cause of the fall. For example, when asked at her deposition to look at a photo and point to the place she fell, Parker stated, "I don't know. It was — I was going down this one, on this rug and I don't know, hit some kind of wall, I know that. But I don't know." When asked what caused her to fall, Parker stated, "I don't know. All of the sudden I was down. I didn't know." When she was shown a photograph of the area where the risers were located, the following colloquy occurred:

Q. Does Exhibit No. 2 show any of the area of the floor where you were?

A. It was all flat then, it was all flat.

Q. Okay. You think it was all flat there?

A. Uh-huh. I didn't see nothing.

Q. All right.

A. Otherwise I would have went around it someplace. There was nothing there.

At another point in her deposition, Parker again repeated that she did not know how she fell, in the following colloquy:

Q. Do you remember tripping over anything, hitting anything before you fell?

A. Wasn't nothing there.

Q. You don't remember stepping off a step or a ledge?

A. No. Level, level place like the table and all of the sudden down I went. I don't know what happened. I don't know.

Q. I think you told us earlier, Ms. Parker, you don't really know what caused you to fall, do you?

A. No, huh-uh, all of the sudden just —

. . . .

Q. [I]s there anything you wanted to show me on any of those pictures?

A. No, I just — this — I didn't see nothing. I didn't see that thing [presumably the riser]. I didn't see nothing. All of the sudden this blue rug, going down the street, and then —

. . . .

Q. And you don't know if — where you were as far as this picture is concerned when you fell, do you?

A. Going around — going down to the auditorium is all I know.

Q. But you don't really recognize this, do you?

A. It wasn't there, it wasn't there. All I seen was flat. Didn't see nothing. See this one, I didn't know that was there even.

Later in the same deposition, Parker testified as follows:

Q. Can you tell me what you think the Lincoln Public Schools did to cause your fall?

A. They should have — steps should have been sight — put something there, you know, so people knew it was there.

Q. Do you think you fell on the steps?

A. I don't know. All of the sudden I was down. I was going straight, I was going down straight flat bottom, straight sidewalk, floor. All of the sudden I hit my head.

The record includes Ferguson's affidavit stating that Parker did not suffer from fainting spells or blackouts, did not have a tendency to trip or fall, and was wearing bifocal glasses and stable shoes on the day of the incident. Ferguson further stated in her affidavit that she did not observe the risers until after Parker's fall.

Parker also submitted the affidavit of James R. Belina, a professional engineer, who expressed an opinion that the risers presented "an unreasonable risk of harm to persons who would be expected to traverse that area." However, Belina did not opine with regard to the specific cause of Parker's fall. LPS submitted evidence that the design of the multipurpose room met all applicable building and safety codes and that the school board

decided in its discretion to accept the design that had been recommended by the school district's professional architects.

Relying on *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997), the district court determined as a matter of law that the evidence did not establish causation and therefore granted summary judgment in favor of LPS. Parker perfected this appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts.

## ASSIGNMENTS OF ERROR

Parker assigns seven errors, all of which can be restated as assigning that the district court erred in granting summary judgment to LPS on the basis that Parker failed to state facts establishing causation.

## SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Kratochvil v. Motor Club Ins. Assn.*, 255 Neb. 977, 588 N.W.2d 565 (1999).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

Parker's injury occurred before our decision in *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), which prospectively abolished the distinction between invitees and licensees with respect to premises liability. In her petition, Parker alleges that she had the status of a "business visitor" at the time of her injury. A possessor of land is subject to liability for injury caused to a business invitee by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have

realized the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the plaintiff invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998); *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997).

A plaintiff in a negligence action is required to adduce evidence showing there was a negligent act on the part of the defendant and that such act was the cause of the plaintiff's injury. See *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997). The mere happening of an accident is insufficient as a matter of law to prove negligence. *Id.* An allegation of negligence is insufficient where the finder of fact must guess the cause of the accident. *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998); *Swoboda v. Mercer Mgmt. Co., supra*; *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995). The key issue in this case is whether there is evidence supporting a reasonable inference that the floor risers were the proximate cause of Parker's fall and resulting injury.

The same issue under similar facts was presented in *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997), a case in which an elderly woman was injured when she fell on a stairway landing. The landing was a few inches lower than an adjacent wooden floor, and a brick ramp that was the same color as the landing extended from the wooden floor to the landing. There were no markings or safety devices to differentiate the ramp from the landing. Swoboda could not remember the circumstances of the fall. Her granddaughter, who was with her at the time, did not observe the fall itself but did observe Swoboda sitting on the wooden floor with her legs extended down the ramp. There was evidence that Swoboda did not have trouble walking and that the ramp was in violation of building codes. The district court granted summary judgment, reasoning that Swoboda's allegation that the ramp caused her fall was based

solely on speculation and conjecture and that therefore, no genuine issue of material fact existed. The Court of Appeals reversed, finding that while it was possible that Swoboda tripped over the top step, her path, physical condition, and the position in which she was seen immediately after the fall supported a reasonable inference that the ramp was the proximate cause of the fall. See *Swoboda v. Mercer Mgmt. Co.*, 96 NCA No. 10, case No. A-94-756 (not designated for permanent publication). We agreed with the district court's judgment and reversed the Court of Appeals' decision, stating that while circumstantial evidence may be used to prove causation, the evidence must be sufficient to fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of a plaintiff's injury. *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997). We further stated that while Swoboda was not required to eliminate all alternate theories regarding how the accident may have happened, she was "required to establish with a *reasonable probability* that the accident happened in the manner alleged in her petition." (Emphasis supplied.) *Id.* at 351, 557 N.W.2d at 632. We concluded that because there was no basis upon which a finder of fact could determine whether Swoboda tripped over the ramp or the top step, the evidence was insufficient as a matter of law to create an inference that the ramp was the proximate cause of the fall. *Id.*

In concluding that the present case was controlled by *Swoboda v. Mercer Mgmt. Co., supra*, the district court noted that "[t]he facts of the cases, other than the location, virtually are identical." It determined that in this case, as in *Swoboda*, a finder of fact "would be required to engage in guesswork to determine the cause of the plaintiff's fall."

Parker argues that her case is distinguishable from *Swoboda* because of her statements to Zabel at the scene of the accident. She contends that these statements would be admissible as excited utterances under Neb. Rev. Stat. § 27-803(1) (Reissue 1995), and LPS does not dispute their admissibility for purposes of its motion for summary judgment. Therefore, the question before us is whether the uncontroverted evidence, including Parker's statements to Zabel, would permit an inference that, with reasonable probability, the accident occurred in the

manner alleged in Parker's petition. Parker alleged that she "walked into an open entryway wherein an unmarked and unguarded ramp or floor riser was present, causing her to fall into a wall and against the floor" and causing injury to her left arm. Photographs of the accident scene establish that there were no warnings or markings to differentiate the floor risers from the adjacent floor area. The base of the first riser was located approximately 6 feet past the doorway through which Parker and Ferguson entered the multipurpose room. Parker had taken five to six steps into the room when she fell. When Ferguson saw her immediately after the fall, Parker was lying on her left side. Her body was perpendicular to the wall, with her head near the wall and her feet protruding over the edge of the first riser at the point where it became elevated in relation to the adjacent floor area. Ferguson, who had entered the room at the same time as Parker, did not observe the riser until after Parker fell. Parker customarily wore bifocals and was wearing them at the time of the fall. She was mentally alert and had no difficulty walking through the school parking lot and other areas of the school building prior to entering the multipurpose room. When she arrived at the scene of the accident, Zabel observed Parker lying across what Zabel described as the "top step." Under these circumstances, Parker's repeated statement to Zabel, "I didn't see the step and I fell," could reasonably be understood to mean that she fell *because* the step was not plainly visible. We conclude that this statement, when considered together with the circumstantial evidence summarized above, would support a reasonable inference that Parker's fall was caused by the unmarked and unguarded floor riser, as she alleged in her petition. By drawing this inference, the finder of fact could determine causation without resorting to conclusions based upon guess, speculation, or conjecture.

We acknowledge that Parker's deposition testimony approximately 14 months following her injury would support an inference that the cause of the fall is unknown. If this were the only evidence on the issue of causation, *Swoboda v. Mercer Mgmt. Co., supra*, would require affirmance. However, as noted above, the circumstantial evidence and Parker's statements to Zabel at the accident scene support a reasonable inference that the

unmarked floor riser was the cause of Parker's fall and resulting injury. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Goff-Hamel v. Obstetricians & Gyns., P.C., ante* p. 19, 588 N.W.2d 798 (1999); *Herman Bros. v. Great West Cas. Co.*, 255 Neb. 88, 582 N.W.2d 328 (1998). Where reasonable minds may differ as to whether an inference supporting an ultimate conclusion can be drawn, summary judgment should not be granted. *Schade v. County of Cheyenne*, 254 Neb. 228, 575 N.W.2d 622 (1998); *Blue v. Champion International Corp.*, 204 Neb. 781, 285 N.W.2d 511 (1979). This case involves conflicting inferences, and under our standard of review applicable to summary judgment, we are required to give Parker the benefit of the inference which supports her theory of causation. We therefore conclude that LPS was not entitled to summary judgment on the issue of causation.

LPS argues that it is entitled to summary judgment on the alternative ground that Parker's claim is barred by the discretionary function exemption to the Political Subdivisions Tort Claims Act, § 13-910(2). Although the district court did not reach this issue, we must do so in order to resolve the appeal. The Political Subdivisions Tort Claims Act, pursuant to which Parker asserts her claim against LPS, provides that it shall not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused." § 13-910(2). We have held that this "discretionary function exemption" is an affirmative defense which must be asserted by answer. *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998). LPS has done so by alleging that "[t]he design, construction, guarding, warning, and use of the multipurpose room in the Hulda Roper school . . . were discretionary functions of the Defendant Lancaster County School District" and that Parker's claims were barred by "governmental and common law immunity." When the facts are undisputed, the determination of whether the discretionary function exemption applies is a question of law. *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994).

The discretionary function or duty exemption extends only to the basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. *Id.* " ' " ' [I]t is the nature of the conduct, rather than the status of the actor that governs whether the discretionary function exception applies in a given case.' ". . .' " *Id.* at 957, 510 N.W.2d at 289. " ' "In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice. . . ." ' " *Id.*

" ' "Moreover, assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. . . ." ' " *Id.* at 957-58, 510 N.W.2d at 289. The basis for the discretionary function exception was the desire to " ' " ' prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'. . ." ' " *Id.* at 958, 510 N.W.2d at 289. The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy. " ' "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." ' " *Id.*

LPS relies on *Chantal v. U.S.*, 104 F.3d 207 (8th Cir. 1997), for the proposition that it cannot be liable under the discretionary function exception. That case involved a personal injury claim by a person who fell on the steps of the Gateway Arch, which is a part of the Jefferson National Expansion Memorial National Historic Site in St. Louis, Missouri. The Eighth Circuit Court of Appeals affirmed a lower court's finding that the claim was barred by the discretionary function exception set forth in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1994). The court of appeals reasoned that based upon unrebutted evidence that the step design was selected to aesthetically complement the Arch, the National Park Service was required to make a " ' policy analysis' " which involved a balancing of "the safety benefit of making changes to the steps with the aesthetic effect

of such changes on the Memorial's overall design and its historic significance." *Chantal v. U.S.*, 104 F.3d 207 at 212.

We do not find *Chantal* persuasive under the facts of this case and our prior interpretation of the discretionary function exemption. The building in which Parker fell was a public school, not a historic landmark. In *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 647, 502 N.W.2d 80, 89 (1993), we held:

> [W]hen (1) a governmental entity has actual or constructive notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons who are likely to be injured by the dangerous condition or hazard, the governmental entity has a nondiscretionary duty to warn of the danger or take other protective measures that may prevent injury as the result of the dangerous condition or hazard. In such a situation, a governmental entity's failure to warn or take other protective measures is not a planning-level decision involving a social, economic, or political policy judgment and, therefore, does not come within the discretionary function exemption of the Political Subdivisions Tort Claims Act.

Parker's allegations that LPS knew or should have known that the "unmarked or unguarded" floor riser involved an unreasonable risk of harm to business visitors and negligently failed to take measures to protect such persons from injury caused by the riser fall squarely within the holding of *Lemke*. We therefore conclude as a matter of law that the discretionary function exemption has no application in this case.

## CONCLUSION

For the foregoing reasons, we conclude that the district court erred in entering summary judgment in favor of LPS and therefore reverse the district court's judgment and remand the cause for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., not participating.