CHARLES DERR, APPELLANT, V. COLUMBUS CONVENTION
CENTER, INC., A NEBRASKA CORPORATION, APPELLEE.

604 N.W.2d 414

Filed January 14, 2000.   No. S-98-256.

James C. Stecker for appellant.

Amy Sherman LaFollette, of Nolan, Roach, Olson, Fieber & Lautenbaugh, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Charles Derr slipped and fell on some ice while he was a guest at the New World Inn in Columbus, Nebraska, a hotel operated by the Columbus Convention Center, Inc. (CCC). Derr sued CCC, but the district court granted summary judgment for CCC. Derr appealed, and the Nebraska Court of Appeals reversed the judgment of the district court. *Derr v. Columbus Convention Ctr.*, No. A-98-256, 1999 WL 4200064 (Neb. App. June 22, 1999) (not designated for permanent publication). CCC petitioned this court for further review, which we granted on August 25, 1999. For the reasons stated below, we reverse the judgment of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

Derr's deposition testimony indicates he was, at the time of his accident, employed as a crew foreman by Hommon Cooling Towers. Derr was in Columbus to work on a cooling tower for Minnesota Corn Processors and had been staying at the New World Inn for about 2 months at the time of his accident.

Derr's accident occurred on August 31, 1995. Derr testified that he was going down the stairs to get some ice from the ice machine and fell when he slipped on some ice spilled on the last step of the stairway and felt a snap in his left ankle. Derr testified that the stairway was an interior, carpeted stairway and that the reason for his fall was a "few pieces" of ice from the ice machine.

The ice machine, according to Derr, was located on the ground floor of the hotel and was positioned against a wall about 3 or 4 feet to the right of the bottom of the stairway. Derr stated

that although he had seen ice on the floor around the ice machine during his stay at the hotel, he had not previously seen ice on the steps. Derr admitted that he had no idea how long the ice on which he slipped had been on the step prior to his fall. Derr knew of no facts that would indicate that CCC knew of the presence of the ice on the step.

In its answers to interrogatories, CCC stated that the stairs were vacuumed and that the floor at the base of the stairs was mopped at least once a day and sometimes more. CCC also stated that there were always regular housekeeping, maintenance, and inspections of the area performed by all of CCC's employees throughout the day. While CCC could not state the number of employees who passed through that area on any day, it opined that numerous employees of CCC passed by that area on a daily basis, often multiple times in a day. CCC stated that all its employees are instructed and trained to keep the entire premises in a clean and safe condition regardless of their particular job duties or description.

As a result of the fall, Derr suffered torn ligaments in his left ankle, which required surgical repair. Derr alleged in his petition that he had suffered a torn anterior talofibular ligament, a severely hypertrophied synovium, and a compressed anterior tibia nerve in his left ankle. Derr prayed for damages based upon pain and suffering, medical expenses, lost wages, and a permanent impairment to his left foot.

The district court, in entering summary judgment, found no evidence in the record to indicate that CCC had created the dangerous condition that led to Derr's accident or that CCC had actual or constructive notice of the condition. The Court of Appeals reversed, finding evidence to support the conclusion that CCC had created the dangerous condition by placing the ice machine near the base of the stairs and failing to regularly patrol the area for spills. *Derr v. Columbus Convention Ctr.*, No. A-98-256, 1999 WL 4200064 (Neb. App. June 22, 1999) (not designated for permanent publication).

## ASSIGNMENTS OF ERROR

CCC assigns on further review, as consolidated and restated, that the Court of Appeals erred in finding that there was suffi-

cient evidence upon which a jury could infer that CCC had created the dangerous condition.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999); *Nebraska Popcorn v. Wing, ante* p. 60, 602 N.W.2d 18 (1999).

■ In reviewing an order of summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Nebraska Popcorn v. Wing, supra*; *Knudsen v. Mutual of Omaha Ins. Co.*, 257 Neb. 912, 601 N.W.2d 725 (1999).

■ The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Id.*

■ A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999); *Stiver v. Allsup, Inc.*, 255 Neb. 687, 587 N.W.2d 77 (1998). At that point, the burden of producing evidence shifts to the party opposing the motion. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997); *Brown v. American Tel. & Tel. Co.*, 252 Neb. 95, 560 N.W.2d 482 (1997).

## ANALYSIS

■ Derr's accident occurred prior to this court's prospective abolition of the common-law distinction between licensee and business invitee in *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). However, in this case, it is clear that Derr, as a guest of the hotel, was a business invitee. An invitee is a person who goes on the premises of another in answer to the

express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998); *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996).

■ A possessor of land is subject to liability for injury caused to a business invitee by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the plaintiff invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999); *Chelberg v. Guitars & Cadillacs, supra.* The first part of the above test may be met by proving any one of the three subparts, namely, that the defendant created the condition, knew of the condition, or would have discovered the condition by the exercise of reasonable care. *Chelberg v. Guitars & Cadillacs, supra.*

The Court of Appeals in the instant case determined that there was no issue of material fact regarding CCC's actual or constructive knowledge of the presence of ice on the stairway and that CCC did not have such knowledge. Derr did not seek further review of these determinations, so they are not at issue in this court, despite an apparent attempt by Derr's counsel to resuscitate his constructive notice claim during oral argument. The sole issue presented by CCC's petition for further review is the Court of Appeals' determination that there was evidence from which a fact finder could reasonably infer that CCC created a dangerous condition that led to Derr's accident.

In so determining, the Court of Appeals relied on this court's decision in *Chelberg v. Guitars & Cadillacs, supra*, also a slip-and-fall case. This court described the factual circumstances as follows:

> Guitars & Cadillacs sold beer out of a "beer trough." This trough was a steel tub filled with ice and bottles of beer, and was located in a recessed area of the club overlapping the tile walkway which circled the dance floor. A customer would tell the bartender what brand of beer the customer wanted, and the bartender would pull out the bottle, dry it off with a towel, open the top, and hand it to the customer. Some customers would pull out the bottles themselves. The beer trough closed at 12:45 a.m. At that time, the bartender loaded the remaining beer bottles into cardboard cases and placed them on a dolly. The loading of the dolly took place in the area where Chelberg fell. The beer was then wheeled to the beer cooler.

*Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 831-32, 572 N.W.2d 356, 358 (1998).

Chelberg contended that Guitars & Cadillacs, during the process described above, created a dangerous condition that led to his accident. This court stated:

> The manager of Guitars & Cadillacs testified that they trained employees involved in beer trough sales activity to grab the beer bottle with a towel, wipe off the bottle, and then hand it to the customer. He stated the reason for this procedure is "the bottles are sitting in a tub of ice and when you pull it out of the ice obviously there is water running off of it. So we wipe it down. It's still ice cold inside and it's still going to seep moisture out or the bottle will still sweat a little bit, but the major amount, the water moisture is wiped off." Giving all reasonable inferences to Chelberg, the fact finder could find that the bottles pulled out of the trough could drip on the floor and create a slippery, wet, and dangerous condition on the tile walkway used by the customers. Then, to allow some of the customers to remove bottles from the trough without wiping them off and, at 12:45 a.m., shortly before Chelberg's fall, take the rest of the bottles out of the trough, again without wiping them off, and load them onto a beer cart parked in the area where Chelberg fell, establishes a question of fact for the fact finder as to whether Guitars & Cadillacs created a dangerous condition.

*Id.* at 836-37, 572 N.W.2d at 361.

The facts of *Chelberg* are distinguishable from those presented in the instant case. In *Chelberg*, the dispositive factor was not the existence of beer trough sales, but the fact that employees of Guitars & Cadillacs had (1) allowed customers to remove their own bottles from the trough without having the bottles wiped and (2) removed the bottles from the trough themselves without wiping the bottles. *Id*. In *Chelberg*, then, the finder of fact could reasonably infer that Guitars & Cadillacs had created a dangerous condition through the active participation of its own employees.

No such evidence exists in the present case. There is no evidence to suggest, nor does Derr argue, that CCC employees were actively involved in spilling the ice on which Derr fell. Instead, the Court of Appeals found:

> In the case before us, giving the benefit of all reasonable inferences to Derr, the fact finder could find that the Convention Center's placement of an ice machine for use by its patrons at the foot of a stairway and the failure to frequently patrol the area for stray ice and melted ice created a dangerous condition.

*Derr v. Columbus Convention Ctr.*, No. A-98-256, 1999 WL 4200064 at *4 (Neb. App. June 22, 1999) (not designated for permanent publication). In other words, the Court of Appeals found that the evidence could support the conclusion that CCC created a dangerous condition merely by placing an ice machine near the foot of the stairs and not establishing a regular schedule for inspecting the area.

However, in this case, the evidence shows that the ice was spilled on the stair, most likely from an ice bucket of another guest at the hotel. No evidence shows, and Derr does not allege, that any employee of the hotel created or was aware of the spill. Without such evidence, the finder of fact could not reasonably infer that CCC "created" the hazard which caused Derr's injury.

CCC presented evidence showing that its employees inspected the area where the accident occurred several times a day and that those employees were trained to recognize and respond to hazardous conditions. CCC's evidence also indicated that no previous similar accidents had occurred on its premises.

This evidence would, if uncontroverted at trial, entitle CCC to judgment in its favor, as it would show that Derr's accident was not reasonably foreseeable and that CCC took reasonable care to prevent such accidents.

In response, Derr presented no evidence supporting a reasonable inference to the contrary. Derr presented no evidence showing that CCC failed to take reasonable care or that CCC's lapses were the proximate cause of his injury. Most particularly, Derr failed to demonstrate how CCC's precautions failed to meet the requirements of reasonable care, what additional precautions would have been required by reasonable care, or how such additional precautions would have prevented his injury. Derr failed to present evidence sufficient to show a material issue of fact.

## CONCLUSION

CCC met its prima facie burden for summary judgment by presenting evidence that its employees were not directly involved in the spill that caused Derr's injury and that CCC was not actually or constructively aware of the spilled ice. Based on the record presented, the finder of fact could not reasonably infer that the placement of the ice machine created a dangerous condition or that CCC failed to take reasonable care to prevent its invitees from being injured.

Consequently, CCC met its burden of proof and was entitled to summary judgment. The Court of Appeals erred in reversing the judgment of the district court. The judgment of the Court of Appeals is reversed, and the cause is remanded to that court with directions to affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., concurring.

I concur in the result reached in the majority opinion; however, I write separately because of a concern relating to the issue of whether CCC exercised reasonable care in patrolling the area around the ice machine.

The only issue on further review in this case is whether CCC created the condition which caused Derr's injury. The Court of Appeals held that there was no genuine issue of material fact regarding whether CCC had actual notice of the condition or would have discovered the condition through the exercise of rea-

sonable care, and neither party questioned this determination. Thus, the majority's discussion regarding the sufficiency of CCC's patrolling efforts is not necessary to resolve the issue presented in this case.