# C.E., appellant, v. Prairie Fields Family Medicine P.C., appellee.

___ N.W.2d ___

Filed March 14, 2014.    No. S-13-455.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment: Final Orders.** A summary judgment order that completely disposes of the subject matter of the case and leaves nothing for the court's determination is final.

4. **Appeal and Error.** Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of error" section of the brief and correspondingly argues in the argument section.

5. **Negligence: Proof.** Identifying a defendant's tortious conduct is crucial to a causal inquiry, but proving tortious conduct is a separate requirement from proving causation.

6. **Summary Judgment: Proof.** A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law.

7. **Summary Judgment: Evidence.** In the face of direct, uncontroverted evidence supporting judgment for the movant, a nonmovant's equivocal statements or speculative assertions do not create a material issue of fact on a disputed ground for summary judgment. The evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.

8. ____: ____. When the parties' evidence would support reasonable, contrary inferences on the issue for which the movant seeks summary judgment, it is an inappropriate remedy.

9. **Negligence.** Where reasonable minds could draw different conclusions from the facts and circumstances presented, a defendant's negligence presents a triable issue of material fact.

10. **Summary Judgment.** At the summary judgment stage, the trial court determines whether the parties are disputing a material issue of fact. It does not resolve the factual issues.

11. **Summary Judgment: Trial.** Summary judgment is an extreme remedy and should not be used to deprive a litigant of a formal trial if there is a genuine issue of material fact.

12. **Negligence: Proof.** A person who alleges negligence of another bears the burden
    to prove such negligence by direct or circumstantial evidence.

Appeal from the District Court for Dodge County: Geoffrey C. Hall, Judge. Reversed and remanded for further proceedings.

Christopher A. Pfanstiel and W. Gregory Lake, of Lewis, Pfanstiel & Reed, L.L.C., for appellant.

Earl G. Greene III and Michael T. Gibbons, of Woodke & Gibbons, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

C.E. appeals the district court's order granting summary judgment to Prairie Fields Family Medicine P.C. (Prairie Fields). C.E. brought claims of intentional and negligent infliction of emotional distress and invasion of privacy. She alleged that a Prairie Fields employee disclosed her positive blood test results for human immunodeficiency virus (HIV) to a third party, which information then spread throughout the Fremont, Nebraska, community where C.E. did business and had friends.

The district court dismissed C.E.'s invasion of privacy claim because it was time barred. Later, it sustained Prairie Fields' summary judgment motion on C.E.'s claims for intentional and negligent infliction of emotional distress. The summary judgment order is the only ruling assigned as error on appeal. The issue is whether C.E. raised a genuine issue of material fact that someone at Prairie Fields disclosed information from her private medical records. We conclude that she did and that the district court erred in sustaining Prairie Fields' motion for summary judgment.

## BACKGROUND

In 2010, C.E. went to a diagnostic laboratory in Omaha, Nebraska, to have a physical examination for a life insurance

application, and the laboratory took a blood sample. The laboratory sent the blood sample to another laboratory, which sent the test results directly to C.E.'s physician at Prairie Fields in Fremont. Although C.E. was unsure of the exact date, sometime in September 2010, Prairie Fields arranged for C.E. to come in for a consultation. When C.E. arrived on a Thursday at about 3 or 4 p.m., Kristy Stout-Kreikemeyer, whom C.E. knew from high school, showed C.E. to a room. C.E. said that when she asked about her test results, Stout-Kreikemeyer looked in C.E.'s file, flushed, and responded that she could not say anything. The record shows that a physician's assistant told C.E. about her positive HIV test. C.E. said that she was told the test was inconclusive; she agreed to another test.

C.E. testified that the next day, Friday, at about 7 p.m., Jonathan Karr, the father of one of C.E.'s daughters, called her or sent text messages to ask how she was because he had heard from his friend Jamie Goertz that she had "'Aids, full blown-out Aids.'" C.E. said Karr sent her the text message that he had received from Goertz. But Karr did not know who had given Goertz that information. C.E. had known Goertz since 2001, but she had not recently kept in contact with Karr or Goertz. C.E. said that she called Goertz to find out his source but that Goertz denied knowing anything about her medical condition and denied contacting Karr. Because C.E. had seen Goertz' text message to Karr, she believed that Goertz was lying to protect someone. C.E. had known Goertz since 2001 through his former wife, because C.E. had babysat their children.

On Monday, C.E. called her doctor at Prairie Fields to find out how this information could have been disclosed and asked him to question his staff. The doctor called C.E. later that week and said that none of his staff knew anything about the disclosure. But he assured C.E. that he had locked up her file and directed more training for his staff on privacy laws.

In February 2012, C.E. filed her complaint. C.E. included Stout-Kreikemeyer as a defendant and alleged that she had disclosed C.E.'s test result to a third party. In July, the court sustained Prairie Fields' motion to dismiss C.E.'s invasion of privacy claim because the applicable statute of limitations

barred the claim.[1] In September, Stout-Kreikemeyer testified in a deposition that although she knew C.E. in high school, she did not know Goertz or Karr. In October, in response to interrogatories, C.E. admitted that she was not sure whether Stout-Kreikemeyer was the person who had disclosed the information. She also admitted during her subsequent deposition that she did not know for certain whether Stout-Kreikemeyer or someone else at Prairie Fields had disclosed the information. C.E. believed it could have been Stout-Kreikemeyer because she had seen a social contact between her and Goertz on an Internet social media service.

But C.E. testified that she knew someone at Prairie Fields had disclosed the information. She testified that she had worked in insurance sales and had made specific inquiries. So she knew the life insurance company and the diagnostic laboratory in Omaha would not have received the test results. The Omaha laboratory's staff had told her the procedure is to send an applicant's blood sample to a different laboratory and then the other laboratory electronically sends the test results directly to the applicant's physician so that no one else learns of the results.

C.E. testified that she did not tell anyone about the test result because she believed that the test result was a false positive. She believed this because her doctor had told her that other antibodies could cause a false positive result and because she had a family history of autoimmune conditions.

After Prairie Fields deposed C.E. and she answered interrogatories, she learned through a discovery request that Sara Sorensen worked at Prairie Fields as a medical transcriptionist. Sorensen was Goertz' former wife, and C.E. believed that Sorensen had disclosed the test results to him. Prairie Fields stipulated that Sorensen had transcribed C.E.'s medical records.

In Goertz' deposition, he said that he and Sorensen had many contacts with C.E. beginning in 2000 or 2001 and that C.E. was around them a lot when their children were young. He said he heard a rumor while he was at a bar one afternoon

---

[1] See Neb. Rev. Stat. § 20-211 (Reissue 2012).

that C.E. had contracted HIV. He initially said that he could not remember who had told him the rumor but then said he had overheard two unknown men talking about it. He denied hearing the rumor from Sorensen. He said that he told Karr about the rumor after Karr mentioned C.E. during a conversation. But after C.E.'s attorney informed Goertz that he had a subpoena for Goertz' telephone records, Goertz said that he had called Karr. According to Goertz, he told Karr that he had heard a rumor that C.E. had HIV and recommended that Karr get tested.

In Sorensen's deposition, she admitted that she knew C.E. in 2001 because she was dating Goertz, who was a long-time friend of Karr, and C.E. was dating Karr. She admitted that the two couples had socialized. She said that Karr even lived with her and Goertz for a couple of months around the time that they separated in 2004. But Sorensen said that C.E. had baby-sat their children only a few times and that she did not know her well. She said that when she typed C.E.'s medical records, she did not associate C.E. with the test results and did not know the test results were C.E.'s until months later when Sorensen's supervisor and two physicians at Prairie Fields questioned her about the disclosure. She admitted that Prairie Fields likely would have fired her if she had reported disclosing a patient's medical records. Sorensen stated she had never heard a rumor that C.E. had contracted HIV. She denied contacting Goertz to discuss C.E.'s medical history.

In April 2013, the court heard Prairie Fields' motion for summary judgment and to dismiss C.E.'s complaint with prejudice. According to the parties' statements, C.E. had moved to add a new defendant. But Prairie Fields argued that the court need not address that motion if the court sustained its motion for summary judgment. The parties agreed to dismiss Stout-Kreikemeyer from the action.

The court couched its order in terms of causation but focused on C.E.'s failure to create an issue of fact that someone from Prairie Fields had disclosed her diagnosis to a third party:

> [Prairie Fields] introduced substantial competent evidence to establish a prima faci[e] showing that there

is a lack of causation by [Prairie Fields] or its agents related to any claim for damages made by [C.E.] in this case. Thus, the Court looks to [C.E.] to produce competent evidence in order to create an issue of material fact, which would allow [C.E.] to avoid summary judgment. . . .

The Court, in reviewing the entire evidentiary record submitted, in a light most favorable to [C.E.], can find no **competent** evidence from [C.E.], which indicates that [Prairie Fields] or its agents [were] somehow negligent and that said negligence caused some type of damage/injury to [C.E.]

In reaching this decision, the Court finds persuasive the deposition testimony of the relevant witnesses involved in this case which is uncontroverted that the disclosed information did not come from an agent of [Prairie Fields]. Further, [C.E.] in her deposition testified that she did not know who disclosed this information. . . . It is well settled Nebraska law that a claim cannot stand when it is based merely on speculation or conjecture. . . .

[Prairie Fields] has made a prima facie showing that there is a lack of causation related to [Prairie Fields]. [C.E.], on the other hand, has failed to bring forth competent evidence to prove more likely than not that [Prairie Fields] or its agents were somehow the proximate cause of some injury or damage to [C.E.]

The court concluded that Prairie Fields was entitled to judgment as a matter of law.

## ASSIGNMENT OF ERROR

C.E. assigns that the court "erred in failing to find there was a question of fact as to whether [C.E.] established proximate causation between Prairie Fields' negligence and damage to [C.E.]"

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts

or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[3]

## ANALYSIS

C.E. contends that the court erred in concluding that no issue of fact existed whether Prairie Fields or its agents had disclosed her medical diagnosis to a third party. Conversely, Prairie Fields contends that C.E.'s circumstantial evidence was insufficient to show that an employee of Prairie Fields disclosed her diagnosis.

[3] Initially, we clarify that Prairie Fields' motion for summary judgment was effectively a request for judgment on any remaining claim in C.E.'s complaint. And the court's order stated that C.E. had failed to show causation for *any* claim of damages that she had against Prairie Fields or its agents. So we interpret the court's order as sustaining Prairie Fields' motion for summary judgment on C.E.'s two remaining claims: both intentional and negligent infliction of emotional distress. Because the summary judgment order completely disposed of the subject matter of the case and left nothing for the court's determination, it was final.[4]

[4] Next, we clarify that we are not addressing C.E.'s argument that Prairie Fields' alleged disclosure of her medical diagnosis was an invasion of her privacy. The court dismissed C.E.'s invasion of privacy claim as time barred, and C.E. does not assign error to that ruling. Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of

---

[2] *Selma Development v. Great Western Bank*, 285 Neb. 37, 825 N.W.2d 215 (2013).

[3] *Id*.

[4] See *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

error" section of the brief and correspondingly argues in the argument section.[5] We do not find plain error in the ruling.

[5] Finally, we clarify the issue to be decided in this appeal. The court incorrectly characterized the parties' factual dispute as relevant to the element of causation. It specifically concluded that C.E.'s claims were speculative because she adduced no evidence showing that someone at Prairie Fields had disclosed her diagnosis, in contrast to the defendants' uncontroverted evidence that Prairie Fields' employees did not disclose the information. This is the crux of the parties' arguments on appeal. But for both of C.E.'s tort claims, whether someone at Prairie Fields disclosed her diagnosis was relevant to her burden of proving tortious conduct. Identifying a defendant's tortious conduct is crucial to a causal inquiry, but proving tortious conduct is a separate requirement from proving causation.[6] Here, the parties are disputing the tortious conduct element—whether there was an unlawful disclosure. With these clarifications, we turn to the standards that govern summary judgment.

[6] A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law.[7] If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law.[8]

[7] In the face of direct, uncontroverted evidence supporting judgment for the movant, a nonmovant's equivocal statements or speculative assertions do not create a material

---

[5] *In re Interest of Landon H., ante* p. 105, 841 N.W.2d 369 (2013).

[6] See, *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013); *Kozicki v. Dragon*, 255 Neb. 248, 583 N.W.2d 336 (1998); Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 26, comment *h*. (2010); 65 C.J.S. *Negligence* § 190 (2010).

[7] See *Peterson v. Homesite Indemnity Co., ante* p. 48, 840 N.W.2d 885 (2013).

[8] See *id*.

issue of fact on a disputed ground for summary judgment.[9] The evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.[10]

[8-11] But when the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy.[11] As we have stated many times, where reasonable minds could draw different conclusions from the facts and circumstances presented, a defendant's negligence presents a triable issue of material fact.[12] At the summary judgment stage, the trial court determines whether the parties are disputing a material issue of fact. It does not resolve the factual issues.[13] Summary judgment is an extreme remedy and should not be used to deprive a litigant of a formal trial if there is a genuine issue of material fact.[14]

C.E. argues that her claim necessarily relied on circumstantial evidence and that the court erred in failing to find that such evidence was sufficient to create an issue of fact whether Sorensen had disclosed C.E.'s positive HIV test. She argues that only a person who worked at Prairie Fields could have learned this information and disclosed it to a third party. She further argues that the court erred in relying on her lack of knowledge about the source of the disclosure in her deposition

---

[9] See *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

[10] See *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999).

[11] See, *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012); *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004); *Parker, supra* note 10.

[12] See, e.g., *Harrison v. Seagroves*, 250 Neb. 495, 549 N.W.2d 644 (1996); *Pearson v. Richard*, 201 Neb. 621, 271 N.W.2d 326 (1978).

[13] See *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004).

[14] See *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

and answers to interrogatories because she did not then know about Sorensen's employment with Prairie Fields.

[12] A person who alleges negligence of another bears the burden to prove such negligence by direct or circumstantial evidence.[15] In *Parker v. Lancaster Cty. Sch. Dist. No. 001*,[16] a premises liability case, we held that the circumstantial evidence was sufficient to support an inference that the defendant's negligence had caused the plaintiff's fall. We reached this conclusion even though the plaintiff had stated in a deposition that she was unsure what had caused her fall. We acknowledged that this statement, standing alone, would support an inference that the cause of her fall was unknown. But immediately after the fall, the plaintiff had reported that she did not see a step. Other evidence established that the plaintiff was mentally alert and that the steps presented a risk to visitors. We concluded that the circumstantial evidence was sufficient to support a reasonable inference in the plaintiff's favor that she fell because the step was not plainly visible.

Although the issue in Parker was causation, the same reasoning regarding circumstantial evidence applies here. And giving C.E. the benefit of all reasonable inferences, the circumstantial evidence that she presented was sufficient to support an inference in her favor.

To recap, C.E. testified that Karr contacted her on Friday night—after she had learned about the positive results in the late afternoon on Thursday. Goertz admitted that he called Karr about C.E.'s contracting HIV. It is true Goertz testified that he overheard a rumor to this effect from strangers while at a bar around 1 or 2 p.m. He did not remember what day he purportedly heard this rumor in a bar. But if a trier of fact believed C.E.'s testimony, then Goertz heard a rumor about C.E.'s contracting HIV less than 24 hours after C.E. learned the test results herself and despite her not disclosing the information to anyone else. And Prairie Fields did not present evidence to refute C.E.'s testimony that no one at the Omaha diagnostic

---

[15] *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003), citing *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998).

[16] *Parker, supra* note 10.

laboratory or insurance company would have known about her test results.

The court incorrectly concluded that the testimony of Prairie Fields' witnesses was uncontroverted. If Sorensen and Goertz truthfully stated that Sorensen did not disclose C.E.'s diagnosis to Goertz, then C.E. must be lying that Goertz contacted Karr the day after C.E. learned about the positive test result, despite C.E.'s not disclosing her diagnosis to anyone. Conversely, if C.E.'s testimony is believed, then the most probable explanation for Goertz' learning about her diagnosis so quickly—whether from overhearing a rumor or speaking directly to Sorensen—is that someone at Prairie Fields disclosed it to a third party. Prairie Fields argues that C.E. could have disclosed her diagnosis to her boyfriend and that Goertz could have overheard the boyfriend repeating the rumor the next day in a bar. But C.E. testified that she did not tell anyone about her diagnosis, and the court was required to give her all reasonable inferences based on that testimony.

Alternatively, Prairie Fields argues that under our case law, circumstantial evidence must meet a higher standard than direct proof in negligence cases. It relies on *Herrera v. Fleming Cos.*,[17] a 2003 case in which we stated that "[w]hile circumstantial evidence may be used to prove causation, the evidence must be sufficient to fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of the plaintiff's injury." It also relies on our statement in *Ditloff v. State Farm Fire & Cas. Co.*[18] that circumstantial evidence must "'"make the plaintiffs' theory of causation reasonably probable, not merely possible."'"

We acknowledge that some of our civil cases have not treated circumstantial and direct evidence equally.[19] In fact, we recognized this tension in *Ditloff*.[20] But we need not

---

[17] *Herrera, supra* note 15, 265 Neb. at 123, 655 N.W.2d at 383.

[18] *Ditloff v. State Farm Fire & Cas. Co.*, 225 Neb. 375, 379, 406 N.W.2d 101, 104 (1987).

[19] See NJI2d Civ. 1.31, comment III. Compare *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

[20] See *Ditloff, supra* note 18.

address whether the statements that Prairie Fields relies on impose a higher burden of production for circumstantial evidence in civil cases generally, because they are not applicable here. Our statement in *Herrera* was limited to proof of causation by circumstantial evidence. As explained, the issue here is proof of tortious conduct, not causation. And the dispute in *Ditloff* was over a directed verdict, not a summary judgment order.

As stated, the issue here is whether the evidence presented—viewed in the light most favorable to C.E. and giving her all reasonable inferences—would support an inference in her favor, without engaging in guesswork, that a Prairie Fields employee disclosed her HIV diagnosis to a third party. We conclude that C.E.'s evidence was sufficient to show that Prairie Fields was not entitled to judgment as a matter of law. The court erred by concluding C.E. presented no competent evidence that a Prairie Fields employee had disclosed her diagnosis. Moreover, the court incorrectly stated that her evidence must show it was more likely than not that a Prairie Fields employee had disclosed her diagnosis. A court does not weigh the evidence at the summary judgment stage.

## CONCLUSION

Because reasonable minds could draw contrary conclusions from the evidence presented, Prairie Fields did not show that it was entitled to judgment as a matter of law. We therefore reverse the court's summary judgment order and remand the cause for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

STEPHAN, J., not participating.