D.K. BUSKIRK & SONS, INC., ET AL., APPELLANTS,
v. STATE OF NEBRASKA, APPELLEE.

560 N.W.2d 462

Filed March 21, 1997.    No. S-94-270.

Michael J. Franciosi, of Atkins, Ferguson & Carney, P.C., and James M. Carney, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellants.

Don Stenberg, Attorney General, Charles E. Lowe, and L. Jay Bartel for appellee.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ., and RIST, D.J.

GERRARD, J.

In this case, the Nebraska Court of Appeals reversed the order of the district court which had sustained a motion for summary judgment in favor of the State of Nebraska and dismissed 19 separate claims, based on the discretionary function exemption in the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1990). *D.K. Buskirk & Sons v. State*, 96 NCA No. 6, case No. A-94-270 (not designated for permanent publication). The State has successfully sought further review in this court.

## FACTUAL BACKGROUND

Nineteen plaintiffs brought separate actions against the State of Nebraska, Public Service Commission (PSC), pursuant to the State Tort Claims Act, with respect to the PSC's alleged negligent regulation of Quality Processing, Inc. (QPI), a grain dealer/warehouser. The plaintiffs are all farmers and ranchers who had entered into contracts with QPI for the sale or storage of dry edible beans and popcorn. The substance of the plaintiffs' claims was that the PSC was negligent in regard to its duty to enforce the Grain Warehouse Act, Neb. Rev. Stat. § 88-525 et seq. (Reissue 1987 & Cum. Supp. 1990), and the Grain Dealer Act, Neb. Rev. Stat. § 75-901 et seq. (Reissue 1990). As a consequence, when QPI filed for bankruptcy in February 1990, the plaintiffs collectively suffered losses of over $400,000.

QPI was licensed by the PSC as a grain dealer pursuant to the Grain Dealer Act, beginning in about July 1988. As a licensed grain dealer, QPI was permitted to purchase grain from producers for the purpose of selling such grain. QPI was not licensed by the PSC as a grain warehouse pursuant to the Grain Warehouse Act. Accordingly, QPI was not permitted to accept grain for storage. An individual or an entity that is licensed as a grain warehouse may also operate as a grain dealer.

The only evidence submitted in the summary judgment proceeding was the deposition of John Fecht, grain warehouse director for the PSC. Fecht was responsible for enforcing the terms of the Grain Warehouse Act. Fecht testified that during a September 8, 1989, telephone conversation with one of the owners of QPI, he learned for the first time that QPI was

engaged in the storage of beans. In order to bring QPI into compliance with the Grain Warehouse Act, Fecht arranged for the appropriate application forms and instructions to be sent to QPI. Fecht also dispatched two PSC inspectors to investigate and report on QPI's two grain storage facilities: one in Hemingford and the other in Ogallala.

QPI failed to return a completed application in a timely manner. On October 24, 1989, Fecht instructed a PSC staff accountant to contact QPI's accountant to discuss the status of QPI's grain warehouse license application. Specifically, the PSC staff accountant was to inform QPI that it should either complete the application and become licensed as a warehouse or use its grain dealer's license to purchase all the beans it was holding in storage.

QPI later informed Fecht that it had misplaced the application materials he had sent. Fecht provided QPI with another set of application materials on November 8, 1989. On December 11, the PSC received QPI's grain warehouse application. However, QPI failed to provide a required audited or reviewed financial statement with this application. QPI never corrected its omission, nor did it purchase all of the grain it was holding in storage. Notwithstanding, Fecht allowed QPI to continue functioning as a grain warehouse without a license, with the intent of eventually bringing it into compliance.

On February 12, 1990, Fecht was informed by a deputy sheriff in Alliance that QPI had issued insufficient-fund checks totaling $37,000. After further investigation, on February 27, Fecht filed a complaint with the PSC and set in motion proceedings for the suspension of QPI's grain dealer license.

Sometime after the suspension of its grain dealer license, QPI financially failed. Thirty-four individuals and businesses filed 44 claims with the PSC, seeking a share of QPI's forfeited grain dealer's bond. Only eight of these claims were allowed, and the bond covered approximately half of these allowed claims. The majority of the claims were denied for one of two reasons: either the claim was not filed in a timely manner or the claim was based on a contract for storage and not for the sale of grain. As a licensed grain dealer, QPI's bond could reimburse only those contracts in which QPI acted in its capacity as a

grain dealer. The bond could not be used to compensate losses occasioned by QPI's conduct as an unlicensed grain warehouse.

Nineteen of the individuals and businesses whose claims against QPI were denied filed suit against the State in the district court for Box Butte County, alleging negligence on the part of the PSC in its enforcement of the Grain Warehouse Act. On the State's motion, the matter was transferred to the district court for Lancaster County on November 12, 1991. The plaintiffs' individual claims were consolidated by order of the district court on January 12, 1992. The State answered and raised as an affirmative defense that it was acting within the meaning of the discretionary function exemption of the State Tort Claims Act.

The parties stipulated to bifurcate the issues of liability and damages. The State then moved the district court for summary judgment on the issue of liability. The State based its motion on the grounds that the undisputed facts show that the plaintiffs' claims may not proceed, as the State is exempted from suit pursuant to § 81-8,219(1), the discretionary function exemption of the State Tort Claims Act. Both parties offered in evidence the deposition of Fecht in support of their respective positions.

The district court granted the State's motion for summary judgment, finding in pertinent part:

No rules or regulations have been established by the PSC setting forth a procedure to be used in issuing a grain warehouse license to an applicant. No rule or regulation exists which says that an application must be filled out and received by the PSC within "x" number of days after the PSC becomes aware that a person is operating without the appropriate license. No rule or regulation authorizes Fecht to allow a person to operate as a grain warehouse while the application process is ongoing. Conversely, no rule or regulation prohibits Fecht from trying to work with an operator while attempting to bring it into compliance.

Broad discretion is to be afforded state agencies where the manner and method of carrying out the agencies' statutory duties is not specifically prescribed. When a statute does not prescribe the action to be taken, leaving the agency or employee to make a judgment and this judgment is based on social, economic or political considerations, it

will be protected by the discretionary function. *See, Securities Investment Co. v. State,* 231 Neb. 536, 437 N.W.2d 439 (1989); *First Nat'l Bank of Omaha v. State,* 241 Neb. 267, 488 N.W.2d 343 (1992); *Jasa v. Douglas County,* 244 Neb. 944, [510] N.W.2d [281] (1994).

The court finds that Fecht's decision on how to handle the grain warehouse licensing procedure for QPI falls within the discretionary function exemption. The court will not second-guess Fecht's decisions in that regard.

The Court of Appeals reversed the judgment of the district court and remanded the cause for further proceedings. The Court of Appeals cited this court's decision in *Wickersham v. State,* 218 Neb. 175, 354 N.W.2d 134 (1984), as standing for the proposition that in the context of a motion for summary judgment such as in the instant case, whether the State is entitled to the discretionary function exemption presents a question of fact. In reversing the judgment of the district court, the Court of Appeals found determinative "[t]he fact that both parties believed Fecht's deposition supported its position indicates that there were questions of material fact, which, when inferred in favor of Buskirk, would preclude summary judgment." *D.K. Buskirk & Sons v. State,* 96 NCA No. 6 at 10, case No. A-94-270 (not designated for permanent publication).

## ASSIGNMENTS OF ERROR

In its petition for further review, the State assigns that the Court of Appeals erred in holding that in the context of a motion for summary judgment, application of the discretionary function exemption of the State Tort Claims Act presents a question of fact and that a genuine issue of material fact is presented in the instant case, precluding summary judgment.

## SCOPE OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Spulak v. Tower Ins. Co.,* 251 Neb. 784, 559 N.W.2d 197 (1997); *Blanchard v. City of Ralston,* 251 Neb. 706, 559 N.W.2d 735 (1997). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the

record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Burke v. Blue Cross Blue Shield*, 251 Neb. 607, 558 N.W.2d 577 (1997); *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997).

## ANALYSIS

The dispositive question in this appeal is whether the State's conduct in the instant case involves a discretionary function or duty for which the State cannot be liable due to the exclusion found in § 81-8,219:

(1) The State Tort Claims Act shall not apply to:

(a) Any claim based upon an act or omission of an employee of the state . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion is abused.

Performance of or failure to perform a discretionary function or duty cannot be the basis for liability under the State Tort Claims Act. *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994).

That which is protected under the State Tort Claims Act, § 81-8,219(1), is the discretion of a governmental executive or administrator to act according to his or her judgment of the best course to be taken. Such discretion includes more than the initiation of programs and activities. Discretion includes determinations or judgments made in establishing plans, specifications, or schedules of operations. Where policy judgment exists, there also exists discretion exempted from liability under the State Tort Claims Act. *Jasa v. Douglas County, supra.*

However, the discretionary function or duty exemption in the State Tort Claims Act extends only to the basic policy decisions made in governmental activity and not to ministerial activities implementing such policy decisions. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996). In other words, the State is liable for negligence of its employees at the operational level, where there is no room for policy judgment. *Id.*

The Court of Appeals relied on our statement in *Wickersham v. State*, 218 Neb. 175, 182, 354 N.W.2d 134, 139 (1984), "[w]hether the State is entitled to the exemption for 'discretionary function or duty' under the State Tort Claims Act at this stage of the proceedings is a question of fact," to find that entitlement to the discretionary function exemption in the context of a motion for summary judgment presents a question of fact.

In *Wickersham v. State, supra*, blood samples taken from heifers sold at a sale barn arrived at the State laboratory in a condition rendering them unsuitable for brucellosis testing. The State did not order retesting of the animals, and the heifers became infected with brucellosis. When Wickersham removed them from quarantine, his cattle also became infected.

After the State Claims Board denied Wickersham's claim, he filed a petition against the State. The State answered and then moved for summary judgment based on the three affirmative defenses pled in its answer. The district court granted the State's motion. We reversed the district court's judgment and stated:

> Whether the State is entitled to the exemption for "discretionary function or duty" under the State Tort Claims Act at this stage of the proceedings is a question of fact. However, upon the same evidence presented at trial as has been presented in this appeal, the State will more than likely find the exemption of discretionary function or duty unavailable in any respect.

*Id.* at 182, 354 N.W.2d at 139. Thus, the *Wickersham* court's holding was necessitated because of the bare evidentiary record before it.

However, subsequent to *Wickersham v. State, supra*, we have uniformly maintained, in cases where *the facts are undisputed*, that the application of the discretionary function exemption of the State Tort Claims Act or Political Subdivisions Tort Claims Act presents a question of law. See, *Talbot v. Douglas County, supra*; *Jasa v. Douglas County, supra*; *Blitzkie v. State*, 241 Neb. 759, 491 N.W.2d 42 (1992).

In *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994), the district court entered a judgment against the county, concluding that the county's department of health had failed to take appropriate steps in regard to the presence of bacterial

meningitis in the population of a day care and nursery school, and that the county's negligence had caused the plaintiff to suffer permanent and catastrophic disability. We held that "whether the undisputed facts demonstrate that liability is precluded by the discretionary function exemption of the Political Subdivisions Tort Claims Act is a question of law." *Id.* at 946, 510 N.W.2d at 283. This is likewise true with respect to the discretionary function exemption of the State Tort Claims Act. Thus, we hold, in cases where the facts are undisputed, that whether liability is precluded by the discretionary function exemption of the State Tort Claims Act is a question of law, and, to the extent that the rule is stated or implied otherwise in *Wickersham v. State, supra*, it is disapproved.

In the instant case, both parties acknowledge that the facts are undisputed and that the applicability of the discretionary function exemption of the State Tort Claims Act is a question of law. We agree, and we conclude that the Court of Appeals erred in reversing the district court's judgment on the grounds that a genuine issue of material fact is presented.

Having concluded that the instant appeal presents only a question of law, we must now determine whether the district court erred in finding the discretionary function exemption of the State Tort Claims Act applicable in this case.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997); *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645 (1997). Thus, it is the State's burden to produce sufficient evidence showing it was acting as a matter of law within the discretionary function exemption of the State Tort Claims Act.

The discretionary function or duty exemption in the State Tort Claims Act is inapplicable to a claim if a statute, regulation, or policy specifically prescribes a course of governmental action or conduct. *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993).

> [A]pplicability of the discretionary function exception in the State Tort Claims Act depends on the conduct in ques-

tion, not on the identity of the actor. The discretionary function exception of the State Tort Claims Act includes a governmental regulatory agency and its action, conduct, and decisions. Judgment or choice is essential and indispensable for discretionary conduct excepted from negligence liability under the State Tort Claims Act. The discretionary function exception of the State Tort Claims Act protects or excepts only governmental decision, action, or conduct based on a permissible exercise of a public policy judgment.

*Security Inv. Co. v. State*, 231 Neb. 536, 546, 437 N.W.2d 439, 446 (1989).

In *Security Inv. Co. v. State, supra*, this court first took note of the fact that the State Department of Banking, while obligated to enforce Nebraska banking laws, is nonetheless vested with broad discretion to determine the method and manner of enforcing such laws and that public policy considerations necessarily operate whenever the department exercises its discretion in enforcement. Moreover, "none of the statutes . . . requires the Department to execute any of its authorized powers." *Id.* at 548, 437 N.W.2d at 447. Accordingly, we held that the asserted claims of negligence on the part of the department with respect to enforcement of the banking laws were excepted by the discretionary function exemption of the State Tort Claims Act.

In *First Nat. Bank of Omaha v. State*, 241 Neb. 267, 488 N.W.2d 343 (1992), First National Bank of Omaha claimed that the State Department of Banking acted negligently with respect to the department's involvement in facilitating First National's acquisition of two state-chartered banking institutions which ultimately failed in the wake of the collapse of Commonwealth Savings Company. This court reaffirmed our decision in *Security Inv. Co. v. State, supra*, and added the conclusion that "operational level decisions made on the basis of a statute giving broad powers are not necessarily outside the discretionary function exemption." *First Nat. Bank of Omaha v. State*, 241 Neb. at 275, 488 N.W.2d at 348. Quoting *United States v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991), we explained: " 'Day-to-day management of banking

affairs, like the management of other businesses, regularly require [sic] judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level. . . .' " *First Nat. Bank of Omaha v. State*, 241 Neb. at 275, 488 N.W.2d at 348.

In the instant case, the State argues that the PSC, much like the Department of Banking, was acting within a broad regulatory framework in which the individual charged with enforcement of the Grain Warehouse Act was to exercise his or her discretion in implementing the act and that this exercise of discretion necessarily involved public policy considerations.

In this regard, Fecht testified that there are no policies, rules, regulations, or handbooks which serve to guide his office in the inspection of a grain warehouse applicant. When Fecht learned QPI was operating as an unlicensed grain warehouse, he had two options: bring QPI into compliance or require it to purchase all stored grain pursuant to QPI's grain dealer's license. According to Fecht, neither option was mandated by an applicable statute, rule, or regulation. No timeframe is mandated by the law for an application to be received by the PSC from one operating as an unlicensed grain warehouse, and although there are no rules or regulations allowing an unlicensed grain warehouse to operate, there are likewise no rules or regulations which require such operation to be immediately shut down. The State contends that it is entirely within the PSC's discretion to work with an unlicensed grain warehouse and attempt to bring it into compliance.

On the other hand, the plaintiffs contend that the Grain Warehouse Act, in nondiscretionary terms, requires that the PSC "shall enforce the Grain Warehouse Act," § 88-545, and that "[n]o person shall operate a warehouse nor act as a warehouseman without a license issued pursuant to the Grain Warehouse Act," § 88-527. Section 88-545 provides that violation of the act constitutes a Class IV felony. The plaintiffs argue that because the plain language of the act makes its enforcement mandatory, the PSC is without discretion with respect to its duty to not allow QPI to act as a grain warehouse prior to issuance of the required license. We agree with the plaintiffs in this regard. The public policy judgments were made by the

Legislature in enacting the Grain Warehouse Act, including the mandatory nature of the act and the provision of criminal sanctions for violations of the act. Here, a statute prescribes a clear course of conduct for the PSC to follow. As such, the discretionary function exemption is inapplicable. See, *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993); *Security Inv. Co. v. State*, 231 Neb. 536, 437 N.W.2d 439 (1989).

Furthermore, the State's argument fails because, contrary to its assertion, the PSC was not acting within a broad regulatory framework with respect to QPI's activity. The PSC is only authorized to regulate those entities which are licensed as grain warehouses. QPI was not so licensed and thus was not within the scope of the PSC's broad regulatory framework.

This is what distinguishes the result in the instant case from our holdings in *Security Inv. Co. v. State, supra,* and *First Nat. Bank of Omaha v. State*, 241 Neb. 267, 488 N.W.2d 343 (1992). In those cases, the Department of Banking was exercising its discretion with respect to the regulation of an entity within its scope of authority. In contrast, the statutory scheme at issue in the instant case does not provide the PSC with discretion to permit the operation of an unlicensed grain warehouse, an entity outside the scope of its regulatory authority. Instead, the statutory scheme mandates that the PSC enforce the Grain Warehouse Act and not allow an unlicensed grain warehouse such as QPI to operate.

Thus, we hold that the State may not avail itself of the discretionary function exemption of the State Tort Claims Act in the instant case. Since the district court allowed the bifurcation of the liability and damage issues in this cause, we necessarily note that our holding is not a final determination regarding liability, as the issue of proximate cause was not presented nor was it considered by this court.

## CONCLUSION

Accordingly, we affirm the judgment of the Court of Appeals, albeit on different grounds, and remand this cause to the Court of Appeals with directions to reverse the judgment of

the district court and remand the cause to the district court for further proceedings consistent with this opinion.

AFFIRMED AND REMANDED WITH DIRECTIONS.

FAHRNBRUCH, J., not participating.