DENNIS D. ROHDE AND ALINE I.M. ROHDE, HUSBAND AND WIFE, APPELLANTS, V. KENNETH KNOEPFEL AND THE CITY OF OGALLALA, NEBRASKA, APPELLEES.

683 N.W.2d 564

Filed March 1, 2005. No. A-03-910.

Lori A. Zeilinger and George M. Zeilinger for appellants.

Jerrod M. Gregg, and, on brief, Edward D. Steenburg, of McQuillan, Steenburg & McQuillan, P.C., for appellees.

INBODY, Chief Judge, and IRWIN and SIEVERS, Judges.

SIEVERS, Judge.

## BACKGROUND

On April 11, 2003, Dennis D. Rohde and Aline I.M. Rohde filed suit in the district court for Keith County, Nebraska, against Kenneth Knoepfel and the City of Ogallala, Nebraska. The complaint alleges that Knoepfel is Ogallala's zoning director. The Rohdes allege that they own a certain piece of real estate within the city limits of Ogallala (hereinafter the City) and that they relied upon Knoepfel's advice and direction in subdividing their property. The complaint alleges that Knoepfel was negligent in providing the Rohdes with incorrect information which directed them to take specific action regarding the subdivision, recommending approval once they had taken such action, and then rescinding his approval, whereupon the City withdrew its approval of the Rohdes' subdivision of the property. The Rohdes claim monetary damages in the amount of $35,000 including fees and expenses

incurred in subdividing the property. The Rohdes allege that they have complied with the conditions of the "Nebraska Tort Claims Act." The City and Knoepfel filed a motion to dismiss under Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003). The district court sustained that motion and dismissed the action, citing Neb. Rev. Stat. § 13-910(4) (Cum. Supp. 2002) and the fact that "neither [Knoepfel nor the City] owed any duty to the [Rohdes]." The Rohdes have perfected an appeal to this court.

## ASSIGNMENTS OF ERROR

The Rohdes contend that the trial court erred in finding that their complaint failed to state a cause of action against Knoepfel and the City and in failing to grant the Rohdes leave to amend their complaint after the motion to dismiss was sustained.

## STANDARD OF REVIEW

Because this action was filed after January 1, 2003, we apply the new rules for "notice pleading" found in the Nebraska Rules of Pleading in Civil Actions. In *Pogge v. American Fam. Mut. Ins. Co., ante* p. 63, 688 N.W.2d 634 (2004), we examined for the first time the scope of review by the appellate courts of a rule 12(b)(6) motion to dismiss under those new rules of pleading. We followed the federal cases and held that we review de novo a lower court's dismissal of a complaint for failure to state a claim. *Pogge v. American Fam. Mut. Ins. Co., supra.* A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief. *Id.* When analyzing a lower court's dismissal of a complaint for failure to state a claim, we accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Id.*

## ANALYSIS

*Introduction.*

Because of the procedural posture of this case, we have no bill of exceptions, and what we know about the claim has been set forth above. In *Pogge v. American Fam. Mut. Ins. Co., supra,* we reversed the decision of the trial court dismissing the complaint, as we found that there was a set of facts which, if proved, could demonstrate entitlement to relief. Ultimately, we apply the same

analysis, as well as very recent Nebraska Supreme Court precedent, to the instant case.

■ Section 13-910 provides in pertinent part that the Political Subdivisions Tort Claims Act shall not apply to the following:

(1) Any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute, ordinance, or officially adopted resolution, rule, or regulation, whether or not such statute, ordinance, resolution, rule, or regulation is valid;

(2) Any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused;

. . . .

(4) Any claim based upon the issuance, denial, suspension, or revocation of or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, or order.

In addition to finding that the Rohdes were owed no duty, the district court specifically found that § 13-910(4) provided grounds for sustaining the motion to dismiss.

*Discretionary Function Exemption and § 13-910(4).*

While no decided appellate case discusses § 13-910(4), its language is clear and unambiguous. It clearly exempts the City from tort claims arising from its failure to issue a "permit, license, certificate, or order" which would allow the Rohdes to subdivide their property. See *id.* However, the Rohdes argue that § 13-910(4) does not apply because it is Knoepfel's and the City's "negligence in misdirecting the [Rohdes] as to the actions they would have to take in preparation for approval of a subdivision" which caused the Rohdes' damages. Brief for appellants at 6, citing *D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997). *D.K. Buskirk & Sons*, reduced to its essence, involved a claim against the Nebraska Public Service Commission (PSC) for damages allegedly suffered because the PSC allowed Quality Processing, Inc. (QPI), a grain dealer which was lawfully permitted to purchase grain from producers for the purpose of selling such grain but was not licensed by the PSC as a grain warehouse pursuant to

the Grain Warehouse Act, see Neb. Rev. Stat. § 88-525 et seq. (Reissue 2003), to accept grain for storage. Because QPI was not licensed by the PSC as a grain warehouse pursuant to the Grain Warehouse Act, QPI was not permitted to accept grain for storage. Nonetheless, QPI was storing grain, and while the grain warehouse director for the PSC made efforts to bring QPI into compliance with the Grain Warehouse Act, such compliance was not accomplished before the plaintiffs, who had grain stored with QPI, sustained losses when QPI went into bankruptcy.

The court in *D.K. Buskirk & Sons* extensively discussed the discretionary function or duty exemption in the State Tort Claims Act, an exemption also found in the Political Subdivisions Tort Claims Act under discussion here. The *D.K. Buskirk & Sons* court made it clear that the discretionary function or duty exemption is inapplicable to a claim if a statute, regulation, or policy specifically prescribes a course of governmental action or conduct, citing *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993). The opinion in *D.K. Buskirk & Sons* also includes the following quote:

> "[A]pplicability of the discretionary function exception in the State Tort Claims Act depends on the conduct in question, not on the identity of the actor. The discretionary function exception of the State Tort Claims Act includes a governmental regulatory agency and its action, conduct, and decisions. Judgment or choice is essential and indispensable for discretionary conduct excepted from negligence liability under the State Tort Claims Act. The discretionary function exception of the State Tort Claims Act protects or excepts only governmental decision, action, or conduct based on a permissible exercise of a public policy judgment."

252 Neb. at 91-92, 560 N.W.2d at 467, quoting *Security Inv. Co. v. State*, 231 Neb. 536, 437 N.W.2d 439 (1989).

It is abundantly clear that the discretionary function exemption in the tort claims acts extends only to basic policy decisions and not to the exercise of discretionary acts at an operational level. See *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996).

The Nebraska Supreme Court in *D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997), distinguished a number of

cases growing out of the regulation of banks by the Nebraska Department of Banking and Finance, saying that in *Security Inv. Co. v. State, supra*, and *First Nat. Bank of Omaha v. State*, 241 Neb. 267, 488 N.W.2d 343 (1992), the Nebraska Department of Banking and Finance was exercising its discretion with respect to the regulation of an entity within its scope of authority. But, in *D.K. Buskirk & Sons*, the statutory scheme at issue did not provide the PSC with the discretion to permit the operation of an unlicensed grain warehouse, because the statutory scheme mandated that the PSC enforce the Grain Warehouse Act and not allow an unlicensed grain warehouse such as QPI to operate.

*D.K. Buskirk & Sons* reinforces the proposition that where the facts are undisputed, the applicability of the discretionary function exemption of the State Tort Claims Act or the Political Subdivisions Tort Claims Act presents a question of law. However, this is an appropriate point to note that *D.K. Buskirk & Sons* was a summary judgment proceeding, whereas all we have before us here are the broad outlines, as normally seen in "notice pleading," from a complaint that the City's employee negligently advised property owners, to their detriment and financial damage, about their proposed subdivision. Therefore, not only do we not have undisputed facts in the instant case, but we really know little about the claim—a circumstance often inherent in "notice pleading" cases.

For example, we do not have before us any of the ordinances setting forth the scheme for the approval of a subdivision in the City. Thus, we know nothing about the terms or conditions upon which a subdivision *may* or *shall* be approved. If that scheme of ordinances were to make it mandatory that the City approve a subdivision upon the satisfaction of certain specified terms and conditions, then the case could well be like *D.K. Buskirk & Sons*, where the PSC had no discretion to allow QPI to operate an unlicensed grain warehouse. Accordingly, because of this lack of knowledge about the City's ordinances, plus not knowing exactly what Knoepfel did or did not do and not knowing whether he was acting at the operational or policy level, we cannot say that § 13-910(4) requires that the motion to dismiss be sustained. There may indeed be a set of facts which, if proved, could establish negligence on the part of Knoepfel concerning information

or advice he gave to the Rohdes which caused them to suffer a monetary loss.

The Nebraska Supreme Court has recently discussed the discretionary function exemption in *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004), saying that a court engages in a two-step analysis to determine whether the discretionary function exemption applies. First, the court must consider whether the action is a matter of choice for the acting employee —an inquiry mandated by the language of the exemption, as conduct cannot be discretionary unless it involves an element of choice or judgment. *Id.*, citing *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999). The second part of the inquiry is whether the judgment being exercised is of the kind that the discretionary function exemption is designed to shield. The *Aguallo* court referenced the Nebraska Supreme Court's earlier decision in *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994), which had quoted the following from *Security Inv. Co. v. State*, 231 Neb. 536, 544-45, 437 N.W.2d 439, 445 (1989):

> "The basis for the discretionary function exception was [the] desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' . . . The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy. . . . In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment."

In *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996), the court succinctly explained that the Political Subdivisions Tort Claims Act eliminates, in part, some of the traditional immunity of subdivisions for the negligent acts of their employees. However, political subdivisions retain their immunity against " '[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion be abused.' " *Talbot v. Douglas County*, 249 Neb. at 625, 544 N.W.2d at 843,

quoting § 13-910(2) (Reissue 1991). *Talbot v. Douglas County* again states the core principle that the discretionary function exemption under the Political Subdivisions Tort Claims Act extends only to basic policy decisions and not to the exercise of discretionary acts at an operational level. "In other words, the State is liable for negligence of its employees at the operational level, where there is no room for policy judgment." *Wickersham v. State*, 218 Neb. 175, 180, 354 N.W.2d 134, 139 (1984), *disapproved on other grounds, D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997).

The complaint before us, when summarized, is that Knoepfel, the zoning director of the City, provided the Rohdes with incorrect information, specifically directed them to take certain actions regarding their subdivision, and recommended approval and then rescinded that approval, resulting in the withdrawal by the City of its approval of the Rohdes' subdivision. Clearly, "notice pleading" has benefits, but such pleadings may not contain adequate information to determine whether a claim for relief has been stated. Thus, rule 12(b)(6) motions to dismiss will likely be sparingly granted, as the rule appears to be that the plaintiff generally must "plead himself out of court" before a rule 12(b)(6) motion has much utility.

In our first foray into the Nebraska Rules of Pleading in Civil Actions, *Pogge v. American Fam. Mut. Ins. Co., ante* p. 63, 688 N.W.2d 634 (2004), we said that a complaint will not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts which would demonstrate an entitlement to relief. The Nebraska Supreme Court in *Kellogg v. Nebraska Dept. of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005), agreed with our holding from *Pogge* and elaborated by pointing out that in considering a motion to dismiss which is reviewed de novo, courts are free to ignore legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations, but that complaints should be liberally construed in the plaintiff's favor and not dismissed for the failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. Accord,

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Rucci v. City of Pacific*, 327 F.3d 651 (8th Cir. 2003).

 In *Spear T Ranch v. Knaub*, 269 Neb. 177, 182-83, 691 N.W.2d 116, 125 (2005), the Nebraska Supreme Court again discussed the new rules of pleading and stated as follows:

> The federal courts have made it clear that a complaint should not be dismissed merely because it does not state with precision all elements that give rise to a legal basis for recovery. *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862 (8th Cir. 1999). As a practical matter, dismissal under rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

Applying these principles to the case before us, we conclude that the trial court's dismissal of the complaint cannot stand. From the complaint, we cannot determine whether Knoepfel was acting at the policy level or the functional level when he gave the allegedly incorrect information about the subdivision, which information the Rohdes alleged caused them to incur costs unnecessarily. Moreover, having no information about the scheme for approval of subdivisions in the City, we are unable to determine whether approval is a ministerial act of the local government upon the landowner's completion of specified predicates for approval or whether there is policy discretion vested in the City's zoning director and the City's governing body which is not subject to challenge by tort litigation. We recognize that § 13-910(4) means that the sovereign's immunity is not waived for claims "based upon the . . . refusal to issue, deny, suspend, or revoke any permit, license, certificate, or order," *id.* And, while the Rohdes' allegation that the "City withdrew its approval of the [Rohdes'] subdivision of the property[,] resulting in monetary damages to the [Rohdes,]" would at first blush seem to fall under the protection of that subsection, the complaint can reasonably be read as asserting that although approval of the subdivision was ultimately denied, the Rohdes would not have proceeded with the attempt to subdivide and incurred the expenses at issue but for the incorrect information and advice of Knoepfel. We do not find in the complaint the "insuperable bar to relief," see *Spear T Ranch v. Knaub*, 269 Neb. at 183,

691 N.W.2d at 125, which would allow the rule 12(b)(6) motion to be sustained.

## CONCLUSION

Therefore, applying a liberal construction to the complaint and recognizing the foregoing principles about the discretionary exemption as fleshed out by case law, we hold that the motion to dismiss should not have been sustained. Accordingly, we reverse the dismissal of the action by the district court and remand the matter for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.