CARA WEICHMAN, SPECIAL ADMINISTRATOR OF THE ESTATE OF ROBERT E. WEICHMAN, DECEASED, APPELLANT, V. LOWER PLATTE SOUTH NATURAL RESOURCES DISTRICT, A NEBRASKA POLITICAL SUBDIVISION, AND NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, APPELLEES.

739 N.W.2d 764

Filed September 18, 2007.    No. A-05-1147.

Ronald J. Palagi and Joseph B. Muller, of Law Offices of Ronald J. Palagi, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Jennifer M. Tomka for appellee Nebraska Department of Correctional Services.

IRWIN, SIEVERS, and CASSEL, Judges.

SIEVERS, Judge.

Cara Weichman, special administrator of the estate of Robert E. Weichman, appeals from the decision of the district court granting summary judgment in favor of the Nebraska Department of Correctional Services (DCS). The district court found that DCS had not waived its sovereign immunity, because the discretionary function or duty exception to such waiver provided by Neb. Rev. Stat. § 81-8,219 (Reissue 2003) was involved in the claim against DCS. We find that the district court erroneously granted summary judgment in favor of DCS. Therefore, we reverse, and remand.

## FACTUAL BACKGROUND

On June 6, 2002, while incarcerated at Community Corrections Center-Lincoln (CCCL), Robert was part of an inmate work detail for Lower Platte South Natural Resources District (NRD). NRD and DCS entered into a contract beginning in 1999 which provided that DCS would "supply to [NRD] certain inmates to perform useful labor on behalf of [NRD]" and that in consideration for the labor, NRD agreed to make monthly payments to DCS. As determined by the unit manager at CCCL, Robert was initially ranked as a "skilled worker," and then was promoted to "advanced skilled worker" on the inmate work detail.

On June 6, 2002, while working for NRD, Robert was assigned to drive an all-terrain vehicle (ATV) with a tank and weed sprayer attached and to spray weeds along a horse trail with another inmate. NRD owned the ATV and the attached tank and sprayer, as well as a safety video that the inmates watched prior to operating the ATV. Robert had operated the ATV on prior occasions for NRD and had stated to NRD personnel that the ATV was light and "squirrelly" in the front end. During the prior occasions, Robert had driven the ATV slowly through washouts and ravines because of the lightness in the front end. Prior to his incarceration, Robert had driven an ATV.

Cpl. Allen Langdale, a "Corporal/Detail Crew Supervisor" at CCCL and a DCS employee, was onsite on June 6, 2002. Corporal Langdale was approximately 200 feet away from Robert when Robert attempted to drive the ATV through an indented or washed-out area. Robert had driven the ATV through the same area weeks earlier without incident. As Robert started up the other side of the indent, the ATV rolled over backward and pinned Robert. As a result of the accident, Robert broke his neck and was paralyzed. While Robert remained incarcerated, the State paid his medical expenses. Robert was paroled in August 2002. Robert died on June 24, 2004.

## PROCEDURAL BACKGROUND

On March 14, 2003, Robert and his wife, Cara, filed a complaint in the district court for Lancaster County against NRD and DCS. In the complaint, Robert claimed that at the time he was injured, he was under the custody and supervision of DCS, and that as a result of the negligence of NRD and DCS in failing to train, instruct, and supervise him in the use of the ATV, he sustained personal injuries. Robert attached to the complaint both the letter he sent to NRD in September 2002 presenting his claim and his subsequent withdrawal of the claim after 6 months. Robert also attached to the complaint both his claim to the State in September 2002 alleging a state tort claim and a letter from the State denying such claim. On April 17, 2003, NRD filed its answer. Then, on June 10, DCS filed its answer, asserting as an affirmative defense that DCS "fall[s] within the discretionary function exception to the State Tort Claims Act pursuant to . . . § 81-8,219(1)."

After Robert died on June 24, 2004, Cara filed a motion for revivor on August 26, and the district court granted the revivor. From this point forward, we will refer to Cara, the plaintiff-appellant, as "Weichman."

On October 27, 2004, DCS filed a motion for summary judgment alleging that DCS was immune from suit and that there were no issues as to any material fact. The summary judgment hearing was held on March 9, 2005. Weichman's counsel was not present at the hearing. The district court received DCS' 14 exhibits into evidence, including Robert's deposition, dated

December 3, 2003; Corporal Langdale's affidavit; and DCS and NRD's contract in effect at the time of the accident.

On May 16, 2005, the district court filed its order granting DCS' summary judgment motion. The district court found that the State had not waived its sovereign immunity and that the case was barred by the discretionary function exception from waiver of sovereign immunity found in § 81-8,219(1). The district court found that there was "no specific statute, rule or regulation that specifically mandates the nature of supervision of inmates assigned to work detail" and that thus, the specifics of such inmate supervision are discretionary. The district court concluded that the "State made [a] policy decision to leave the training and supervision of the inmates' work to their respective employers, in this case, the NRD."

On June 10, 2005, Weichman filed a motion to vacate the order granting summary judgment in favor of the State or, in the alternative, for an entry of a final order. On August 31, the district court overruled Weichman's motion to vacate and directed that a final order pursuant to Neb. Rev. Stat. § 25-1315 (Cum. Supp. 2006) be entered as to DCS. Weichman now appeals.

We note that after Weichman filed the motion to vacate or, in the alternative, for an entry of a final order, the district court held a hearing on August 18, 2005, on NRD's motion for summary judgment, which motion the court thereafter overruled. Thus, but for the order of August 31, the order granting summary judgment in favor of DCS would be interlocutory, and not subject to appeal. The transcript from the August 18 hearing, the exhibits received, and the district court's decision on NRD's motion are in our record but cannot be properly considered by this court in the present appeal, because such were not part of the record created during DCS' summary judgment hearing. Specifically, we have not considered exhibits 16 through 19, which, while part of our record, were not introduced into evidence in the present summary judgment proceeding involving DCS.

## ASSIGNMENTS OF ERROR

Weichman asserts, restated and consolidated, that the district court erred in determining that the failures of the correctional

officers were a discretionary function and, thus, erred as a matter of law in finding that DCS was immune from suit.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Bennett v. Labenz*, 265 Neb. 750, 659 N.W.2d 339 (2003). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

A question of law raised in the course of consideration of a motion for summary judgment, as with any question of law, must be decided by the appellate court without reference to the decision of the trial court. See *Essen v. Gilmore*, 259 Neb. 55, 607 N.W.2d 829 (2000).

## ANALYSIS

The broad question in this appeal is whether the discretionary function exception to the waiver of sovereign immunity found in the State Tort Claims Act prevents the imposition of liability on DCS so as to mandate judgment in favor of DCS as a matter of law. The district court found that the "method and manner in which inmates on work crews are supervised is the type of discretion the Nebraska Legislature intended to shield from liability." The discretionary function or duty exception found in § 81-8,219(1) provides that the State Tort Claims Act shall not apply to

> [a]ny claim based upon an act or omission of an employee of the state . . . or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion is abused.

"'Performance of or failure to perform a discretionary function or duty cannot be the basis for liability under the State

Tort Claims Act.'" *Jasa v. Douglas County*, 244 Neb. 944, 955, 510 N.W.2d 281, 288 (1994). That which is protected under the State Tort Claims Act, § 81-8,219(1), is the discretion of a governmental executive or administrator to act according to his or her judgment of the best course to be taken. *D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997). "Such discretion includes more than the initiation of programs and activities. Discretion includes determinations or judgments made in establishing plans, specifications, or schedules of operations." *Id.* at 89, 560 N.W.2d at 466. Where policy judgment exists, there also exists discretion exempted from liability under the State Tort Claims Act. *Jasa v. Douglas County, supra.* However, the discretionary function or duty exemption in the State Tort Claims Act extends only to the basic policy decisions made in governmental activity and not to ministerial activities implementing such policy decisions. *D.K. Buskirk & Sons v. State, supra.* That is, the State is liable for negligence of its employees at the operational level, where there is no room for policy judgment. *Id.* ""[I]t is the nature of the conduct, rather than the status of the actor[,] that governs whether the discretionary function exception applies in a given case."'" *Security Inv. Co. v. State*, 231 Neb. 536, 544, 437 N.W.2d 439, 445 (1989), quoting *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988). In cases where the facts are undisputed, the application of the discretionary function exemption of the State Tort Claims Act presents a question of law. *D.K. Buskirk & Sons v. State, supra.*

In the instant case, even though Weichman's counsel failed to appear at the summary judgment hearing and to contradict or contest DCS' evidence, there are a number of unresolved facts—remembering that on summary judgment, we view the evidence most favorably to Weichman. We begin by noting that the record provides the following uncontested evidence: NRD was the contracting agency hiring the inmates on June 6, 2002, and NRD owned the ATV, the attached tank and sprayer, and the video concerning ATV use and operation. Despite this uncontested evidence, there appears to be a factual dispute about Corporal Langdale's supervisory responsibilities and general duties while the inmates are working for NRD.

In Robert's deposition, he testified that on the day of the accident, there was an NRD employee present who was the supervisor, who supervised all of the inmates on the work detail, and who set up the jobs for that day—but Robert does not say that this person was present during the day or at the time of the accident. Robert also testified that the NRD employee "trusted us enough to go out — [another inmate] and I to go on our own to [spray weeds on] the horse trails." However, at the time of Robert's accident, Corporal Langdale, the only supervising DCS employee at the worksite, said that he was approximately 200 feet away from Robert, supervising three other inmates spraying weeds on a bike trial. Corporal Langdale's "Incident Report" makes no mention of any NRD employee being present when Robert was injured. While Corporal Langdale stated in his affidavit that his responsibilities "are limited to security and do not include supervision of the inmates' work while on the detail crew," his affidavit is clearly contradictory, because he later states the following:

> [P]ersonal instruction on how to use the ATV is given by employees of the NRD and the NRD employees are the persons who ensure that the inmates are comfortable and proficient in operating the ATV before the inmate is allowed to operate it. Inmates are instructed through the safety video as well as personal instruction by NRD employees that no more than one person should ride on the ATV at any time. When an NRD employee is unavailable or requests my assistance, I will help with the above described tasks as needed.

The totality of the evidence, viewed most favorably to Weichman, allows the inference that Corporal Langdale, a DCS employee, was the sole supervisor of the inmates on this work detail, including Robert, and that Corporal Langdale was supervising three other inmate workers spraying weeds on the bike trail at the time of Robert's injury and was approximately 200 feet away from Robert. This evidence suggests that contrary to a statement in Corporal Langdale's affidavit, his responsibility on June 6, 2002, was not limited to "security," and creates an issue of material fact.

Langdale, a corporal correctional officer, admitted in his affidavit that he helps with the tasks described therein—i.e., showing a safety video owned by NRD, giving personal instruction on using the ATV, and ensuring that the inmates are comfortable and proficient in operating said ATV—when an NRD employee "is unavailable or requests [his] assistance." This evidence also creates an issue of material fact as to whether Corporal Langdale's activities were solely "security" and whether he was working at an operational level at the time of the injury.

This case seems to provide a cogent example of the difference between operational (ministerial) and policy (discretionary) matters. In this regard, we are particularly mindful of the cautionary holding of *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 417, 591 N.W.2d 532, 540 (1999), that in applying the discretionary function exemption, courts must look to whether the judgment being exercised "'"'is of the kind that the discretionary function exception was designed to shield.'"'" Quoting *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994). In *Security Inv. Co. v. State*, 231 Neb. 536, 545, 437 N.W.2d 439, 445 (1989), the Nebraska Supreme Court explained that the discretionary function exception was designed to "'"'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy"'"'" by tort actions and that the "'exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.'"

Deciding whether to have incarcerated inmates do work for NRD is a policy decision of the kind that the Legislature does not intend that the courts be involved with through tort litigation. However, once the policy is decided to have inmates do such work, there are the basic "nuts and bolts" ministerial matters such as who shall provide supervision and training, as well as the nature and extent of such. DCS' decision to allow inmates to participate in work details for NRD was clearly a discretionary function. However, if Corporal Langdale becomes involved with the training, instructing, and supervising of the inmates who use the ATV while working for NRD, and there is some evidence of such, when the record is viewed most favorably to Weichman, then whether the discretionary function or

duty exception from liability applies is a material issue of fact for trial.

Viewing the evidence in a light most favorable to Weichman and giving Weichman the benefit of all reasonable inferences deducible from the evidence, it cannot be said as a matter of law that all of Corporal Langdale's activities on the day of the injury rose to the level of discretionary policy decisions. The record does not establish as a matter of law that the rather elementary decisions being made by Corporal Langdale on June 6, 2002, were social, economic, or political policy decisions which the Legislature intended to be shielded from tort liability by the discretionary function or duty exception. Moreover, there are issues of fact as to what decisions Corporal Langdale made on June 6, because while he says his responsibilities "are limited to security" and do not include supervision of the inmates' work, the record reveals, at least inferentially, that he was the only person present to supervise the inmates and that on occasions "[w]hen an NRD employee is unavailable or requests [his] assistance," he will become involved in instruction concerning use of the ATV. Whether he did so on the day of the injury is uncertain—but a factual question is presented by this inconsistency. See *Aguallo v. City of Scottsbluff,* 267 Neb. 801, 678 N.W.2d 82 (2004) (remanding case because conflicting evidence surrounding whether discretionary function applied prevented determination of such as matter of law). Therefore, the district court erred in granting summary judgment in favor of DCS on the basis of the discretionary function exemption under the State Tort Claims Act.

REVERSED AND REMANDED.